NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4579
_____

UNITED STATES OF AMERICA

v.

JOSEPH BIGICA,
                                Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-12-cr-00318-001)
District Judge:  Honorable Faith S. Hochberg
_____

Submitted Under Third Circuit LAR 34.1(a)
October 29, 2013

Before:  FISHER, JORDAN and SLOVITER, *Circuit Judges.*

(Filed: October 31, 2013)
_____

OPINION
_____

JORDAN, *Circuit Judge*.

Joseph Bigica appeals the sentence imposed on him by the United States District

Court for the District of New Jersey.  He contends that the District Court erred in

calculating his sentencing range by not considering his two offenses to be of the same

general type and by not holding an evidentiary hearing before ruling on his request for an

offense-level reduction for acceptance of responsibility. We discern no error in the sentencing and will affirm.

## I. Background[1]

On May 9, 2012, Bigica pled guilty to a two-count Information charging him with corruptly interfering with the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a), and conspiring to violate the Federal Election Campaign Act through the use of straw contributors to a federal election campaign, in violation of 18 U.S.C. § 371. Those charges were the result of two things: first, Bigica's failure to pay any of the approximately $1,488,020 in federal taxes he owed for 1999 through 2006, despite his having earned $5,801,888 in gross income during that time, and, second, his contribution from 2006 to 2009 through straw donors of $98,600 to various federal election campaigns.

In Bigica's plea agreement, the parties noted their positions on certain issues related to the calculations necessary under the United States Sentencing Guidelines ("U.S.S.G."). In particular, they stipulated to a total offense level of 22 for his tax offense and to a total offense level of 22 for his illegal campaign contribution offense. The government did not believe that the counts should be grouped for sentencing purposes, but Bigica reserved the right to argue that they should be grouped. The parties also stipulated that Bigica had demonstrated acceptance of responsibility and he thus qualified for a 3-level reduction in his offense level calculation.

---

[1] Because we write solely for the parties, we set forth only the facts necessary to resolve this appeal.

2

The United States Probation Office prepared a presentence investigation report ("PSR") which accepted Bigica's offense level for the tax evasion count as 22 and his offense level for the illegal campaign contributions count as 22. It added a 2-level enhancement because the counts were not grouped, but it "marginally afforded" Bigica a 3-level offense-level reduction for acceptance of responsibility. (PSR ¶ 80.) That resulted in an adjusted offense level of 21. With Bigica's Criminal History Category of I, the PSR provided his final Guidelines range as 37 to 46 months' imprisonment.

In his written response, Bigica did not question the calculation, but did object to the analysis of his financial ability to pay restitution. Specifically, the PSR explained that

> [w]hile the defendant unquestionably suffers from various financial shortcomings, we submit he has not proven an inability to pay a fine. Bigica failed to submit complete financial statements, and the documentation and information that was otherwise submitted is, in parts, contradictory if not altogether absent. The defendant continues to flagrantly disregard his legal responsibilities and clearly lives way above his financial means, even in light of the instant criminal prosecution and inherent sanctions the Court may impose. While a cursory review of the financial statement submitted by the defendant in August 2012 would make him appear nearly destitute, any assets are directly attributable to the defendant's income as Mrs. Bigica is not employed outside the home. The expenditures and liabilities proffered by the defendant consist largely of unnecessary living expenses, those which exceed the income Bigica reports, or are debts resulting from the defendant's criminal conduct.

(*Id.* ¶ 232.) The PSR summarized Bigica's objection, stating that he contended he made a "good faith effort" to provide the requested documentation, but explained that his financial situation was "complex." (*Id.* at 63.) Bigica also claimed that he failed to provide complete financial statements because he was "somewhat disorganized" with

3

respect to his financial documentation. (*Id.*) He also claimed that he was attempting to pay "pre-existing financial responsibilities," which apparently prevented him from beginning to pay his back-taxes. (*Id.*) The day before sentencing, the District Court ordered Bigica to submit his 2011 tax return and other required financial information to the Probation Office. He complied with that order.

At sentencing, Bigica argued that his two counts should have been grouped pursuant to U.S.S.G. § 3D1.2(d),[2] which would have resulted in an offense level of 22 before any acceptance of responsibility reduction was granted. The District Court disagreed and concluded that the two counts should not be grouped because they

---

[2] That Guidelines provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
>> (a) When counts involve the same victim and the same act or transaction.
>>
>> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>>
>> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>>
>> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S. Sentencing Guidelines Manual § 3D1.2.

involved different harms and were not of the same general type of conduct. Thus, at the stage of analysis before the "acceptance of responsibility" issue was addressed, the Court adopted an adjusted offense level of 24.

The District Court then rejected Bigica's request for an acceptance of responsibility reduction. The judge explained, "[i]n 13 years on the bench[,] I have never denied acceptance of responsibility," but "[i]n this case I'm inclined to" because of Bigica's apparent lack of compliance with Probation's requests for financial documentation and refusal to curtail his extravagant lifestyle. (App. at 130.) The Court gave Bigica "every opportunity to prove" that he deserved the reduction but ultimately concluded that he had continued in his same lifestyle and had not fully complied with the probation department's request for financial documents. (*Id.*) The Court then calculated his Guidelines range as 51 to 63 months, and, after considering the factors set forth in 18 U.S.C. § 3553(a), it sentenced Bigica to 60 months' imprisonment.

Bigica filed a timely notice of appeal. [3]

---

[3] The government stipulated in the plea agreement that Bigica could appeal his sentence if the Court determined his offense level was above 21.

## II. Discussion[4]

Bigica contends that the District Court erred by failing to group his two counts of conviction together for sentencing, and by not holding an evidentiary hearing on his objection to the PSR. We address each argument in turn and conclude that the District Court was correct in both respects.[5]

### A. *Grouping of Counts*

As noted earlier, § 3D1.2 of the U.S.S.G. provides, in relevant part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule

---

[4] The District Court had jurisdiction pursuant 18 U.S.C § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. "[A] determination of whether 'various offenses were part of one overall scheme' [for grouping under the Guidelines] is essentially a factual issue which we review under a clearly erroneous standard. … [W]hen reviewing the appropriateness of a grouping, deference must be given to the district court." *United States v. Seligsohn*, 981 F.2d 1418, 1425-26 (3d Cir. 1992), *superseded by statute for other reasons as stated in United States v. Corrado*, 53 F.3d 620, 624 (3d Cir. 1995). "Our review of whether the district court properly complied with the mandate of Federal Rule of Criminal Procedure 32[] is plenary." *United States v. Furst*, 918 F.2d 400, 406 (3d Cir. 1990). We review for abuse of discretion a district court's decision to hold (or not to hold) an evidentiary hearing at sentencing. *United States v. Houston*, 217 F.3d 1204, 1206-07 (9th Cir. 2000); *cf. United States v. Styer*, 573 F.3d 151, 153-54 (3d Cir. 2009) (observing that the decision whether to hold an evidentiary hearing in connection with a motion for reduction of sentence was committed to the trial court's discretion and reviewed for abuse thereof).

[5] Bigica raises a third argument in his reply brief: he says the government violated the plea agreement by not arguing at sentencing that he was entitled to an offense-level reduction for acceptance of responsibility. We have consistently held that arguments made in reply briefs are waived. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005). Bigica fails to present any sound reason why we should not apply that rule in this case. In any event, the government did state at sentencing that it believed Bigica had honored the plea agreement and had therefore "accepted responsibility for purposes of the plea agreement." (App. at 167.) The government's motion to strike Bigica's late-breaking argument or, alternatively, to file a sur-reply brief is denied as moot.

... (d) [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d).[6] The commentary expands on that section, stating, "Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection. In such cases, the offense guideline that results in the highest offense level is used; *see* U.S.S.G § 3D1.3(b). The 'same general type' of offense is to be construed broadly." *Id.* cmt. n.6.

Bigica contends that the District Court erred in not concluding that his tax evasion and illegal campaign contribution counts were of the "same general type" so as to be grouped for purposes of sentencing. Specifically, he points to the District Court's statement that the victims of his crimes were the same: the citizens of the United States.[7] Therefore, as his argument goes, "[b]oth of these schemes involved fraud against the federal government and harm to 'all citizens of the United States,' making them the same general type" for grouping purposes. (Appellant's Opening Br. at 11.)

---

[6] No one contends that subsections (a), (b), or (c) of § 3D1.2 are applicable in this case.

[7] Bigica's characterization of the Court's statement that the victims of his crimes were the American people as it relates to grouping is misleading. The Court was not addressing his grouping argument, but instead responding to his argument that his crimes had no victims at all for consideration under the § 3553(a) factors.

Bigica is mistaken. At a high level of abstraction, every violation of federal law could be said to victimize the general citizenry, but taking that approach would make reasoned distinctions of the type contemplated by the Guidelines impossible. Not all criminal activity is of the same general type, and it should not be treated as such.

Tax evasion has the purpose of depriving the federal government of money owed. Federal election fraud, on the other hand, has the purpose of influencing a political figure with forbidden donations of cash or other resources. Those crimes are plainly different and do not warrant grouping. *Cf. United States v. Seligsohn*, 981 F.2d 1418, 1425 (3d Cir. 1992) (concluding, *inter alia*, that tax evasion and bribery of a union official are not sufficiently related for grouping under § 3D1.2(d)), *superseded by statute for other reasons as stated in United States v. Corrado,* 53 F.3d 620, 624 (3d Cir. 1995). Accordingly, the District Court's refusal to group the offenses was not erroneous, let alone clearly erroneous.

B.      *Requirement for an Evidentiary Hearing*

Federal Rule of Criminal Procedure 32 provides that the District Court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing … ." Fed. R. Crim. P. 32(i)(3)(B). "When a defendant disputes facts included in a presentence report, Rule 32([i])(3)([B]) … requires a sentencing court to resolve those disputes or to determine that it will not rely on the disputed facts in sentencing." *United States v. Gomez*, 831 F.2d 453, 455 (3d Cir. 1987).

8

Bigica contends that, because he objected to paragraph 232 of the PSR, which contained an analysis of his financial condition and a representation that he had not been fully cooperative, he was entitled to an evidentiary hearing so the Court could rule on disputed facts.[8] That is not correct. Rule 32 does not make an evidentiary hearing mandatory; it only requires the District Court to either make a finding as to the disputed facts or expressly disclaim use of the disputed facts in sentencing. *United States v. Furst*, 918 F.2d 400, 408 (3d Cir. 1990). The Court here complied with that rule. At the beginning of the sentencing hearing, the Court specifically asked Bigica whether there were any factual errors or omissions contained within the PSR that needed to be addressed. He responded that there were factual inaccuracies, and the Court proceeded to either make findings regarding those alleged inaccuracies or state that it would not consider those facts. Bigica did not, however, state that there was a factual error with respect to the contents of paragraph 232 of the PSR. Moreover, at the sentencing hearing, the Court specifically asked Bigica to present his case as to why the PSR was not correct and why he should receive an acceptance of responsibility reduction. Tellingly, Bigica fails to address in meaningful fashion the following statement from the Court:

> Here, the conduct of the defendant post plea that has been of concern to the Court, and which I have amply given the defendant and his counsel time and the opportunity to address, is first and foremost the compliance with the request of the United States Probation Office and recognition and honoring the promise made at the plea agreement of full

---

[8] Bigica does not indicate what evidence he would have presented at an evidentiary hearing, beyond financial documents that had already been submitted to the District Court.

9

restitution. The presentence report is replete with multiple examples that go far beyond any claim of mistake or error in judgment or an excusable neglect in not supplying complete and accurate information in his initial personal financial statements to the [P]robation [O]ffice.

(App. at 202.) The Court thus considered Bigica's contested facts and decided not to draw the inferences he wished from those facts. Simply put, Bigica characterized the facts in the PSR differently, and the Court, after giving time for argument, found Bigica's characterization unworthy of credence. There was no error in the sentencing procedure.

## III. Conclusion

For the foregoing reasons, we affirm the sentence imposed by the District Court.