**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1134

_____

United States of America,

v.

James M. Harris, III, a/k/a James Smalls, a/k/a James Gunplay,

Appellant

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No.: 1-11-cr-00783-004)
District Judge: Honorable Renée M. Bumb

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on July 2, 2019

(Opinion filed October 25, 2019)

Before: McKEE, PORTER and RENDELL, <u>Circuit Judges</u>

OPINION*

**RENDELL**, <u>Circuit Judge</u>:

Appellant James Harris, III urges that the District Court abused its discretion when it resentenced him to the top of his new Guidelines range after previously sentencing him toward the middle of his former range. Finding no error, we will affirm the District Court's order.

I

In 2011, an undercover agent ("UC") working for the Bureau of Alcohol, Tobacco, and Firearms ("ATF") met with suspected members of the Bloods street gang. The UC proposed that the group rob a residence where drug dealers stored illicit contraband, proceeds, and weapons (the "stash house"). After the group had begun making plans to do so, Harris was brought into the conspiracy by the suspected gang members approached by the UC. During meetings with the UC, Harris asked if there would be lookouts, did not object to plans to murder individuals at the stash house, and referred to the plan as "another day on the job." Appellee Br. 4. Sometime after Harris

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

was brought into the conspiracy, he is alleged to have murdered two young men in an execution-style killing.

The ATF eventually arrested Harris and charged him with conspiracy to commit robbery and conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. Harris was convicted on both counts. At sentencing, the District Court calculated a Guidelines range of 188 to 235 months and ultimately imposed a sentence of 211 months' incarceration.

After Harris' sentence was imposed, Amendment 782 to the United States Sentencing Guidelines became effective. The amendment retroactively reduced the offense levels assigned to most drug quantities under U.S.S.G. § 2D1 by two. In response to Amendment 782's implementation, Harris filed for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Harris submitted that his new Guidelines range was 151 to 188 months' imprisonment and argued that he was entitled to a lower sentence of 151 months' imprisonment. He believed that his post-sentence conduct, his lowered risk of recidivism, and the reasons for Amendment 782 all supported this specific sentence. The government opposed the sentence reduction, arguing that Harris was still a danger to the public. In arguing this, the government relied, in part, on Harris' pending double homicide trial and pointed out that Harris was, at the time, awaiting retrial after photographic evidence was held to have been wrongly admitted into evidence.

After considering both sides' arguments, the District Court found that Harris' new Guidelines range was 151 to 188 months' imprisonment and imposed a new sentence of 181 months' imprisonment. This appeal followed.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and 18 U.S.C. § 3582(c)(2). We have jurisdiction pursuant to 18 U.S.C. § 1291. We review resentencing decisions under an abuse of discretion standard. *United States v. Steyer*, 573 F.3d 151, 153 (3d Cir. 2009).

## III

Harris raises claims regarding both the procedural and substantive reasonableness of his new sentence. He urges that his sentence was procedurally unreasonable because he contends that the District Court failed to properly consider the reasons behind Amendment 782 and the disproportionate impact of sting operations on racial minorities, and erred by considering his willingness to kill. He argues that his sentence was substantively unreasonable because his new sentence was placed relatively higher in the new range than his previous sentence was in the former range.[1]

A district court follows a two-step procedure when considering motions to resentence. The district court must (1) establish that the petitioner is statutorily eligible

---

[1] Harris' eligibility for a new Guidelines range of 151 to 188 months' imprisonment is not disputed in this appeal.

for a reduction under 18 U.S.C. § 3582(c)(2) and then (2) consider the 18 U.S.C. § 3553(a) factors and any relevant policy statements to determine the new sentence. *Dillon v. United States*, 560 U.S. 817, 826-27 (2010). At step two, the resentencing court must adequately address both parties' concerns and have a "reasoned basis" for the new sentence it imposes. *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018).

First, Harris claims that the District Court did not adequately consider the policy rationales for Amendment 782. The policy rationales for Amendment 782 are as follows: (1) to decrease overcrowding in federal prisons, (2) to reflect the fact that the law no longer needs to set the Guidelines above the mandatory minimum, (3) to focus resources on decreasing recidivism, and (4) to reflect the fact that the law now adequately differentiates between drug crimes. *See* U.S. Sentencing Guidelines Manual, supp. app. C, amend. 782. Harris argues that the District Court failed to properly consider the first three policy rationales.

The District Court needs to show that it considered the policy rationales for the Amendment. *See* 18 U.S.C. § 3582(c)(2); *Chavez-Meza*, 138 S. Ct. at 1964. The Court does not need to include a full explanation for each policy rationale, as long as the record indicates that the Court considered each. *See Chavez-Meza*, 138 S. Ct. at 1967 (upholding a resentencing determination where the Judge "certified (on a form) that he had . . . tak[en] into account the relevant Guidelines policy statements" (internal quotation marks omitted)). Here, the District Court explicitly noted the first two policy considerations in its resentencing order by stating that "Amendment 782 was enacted to reflect [the]

5

determination that 'setting the base levels slightly above [the] minimum is no longer necessary'. . . as well as to address 'the significant overcapacity . . . of Prisons.'" App. 12. In doing so, the District Court fulfilled its statutory obligation.

The District Court also adequately considered Harris' risk of recidivism. Harris offers a menagerie of secondary sources to show that the law of diminishing returns applies to the deterring effects of incarceration. Despite Harris' eclectic array of support for his argument, the District Court was not required to do anything more than address and consider his risk of recidivism, which it did multiple times. *See* App. 16 ("[A] sentence within the applicable Guideline range will . . . deter future criminal conduct by Defendant and others."); *id.* ("[A] sentence within the applicable Guideline range protects the public from further crimes by the Defendant."). The District Court did not impose a lower sentence because it was concerned with the severity of Harris' crimes. App. 15 ("[The crime] was and remains disturbing to the Court."); App. 16 ("A lesser sentence may be perceived as too lenient."). The District Court's extensive reasoning as to how the defendant's risk of recidivism factored into the sentence it imposed was more than sufficient to fulfill its statutory obligation.

Next, Harris argues that the District Court did not adequately address his argument that sting operations are a form of institutionalized racism. The District Court explicitly addressed and dismissed Harris' concerns in its opinion:

> Defendant asks this Court to consider that reverse sting operations target racial and ethnic minorities. The facts of this case . . . demonstrate[] that

6

> Harris was brought into the conspiracy by members of the Bloods street gang with whom [he] admits he associated with at the time.

App. 15 n.1. We agree that Harris failed to show how his argument applies to the facts of this specific case. Therefore, the District Court sufficiently addressed it.

As a final procedural challenge, Harris argues that the District Court erred in considering his willingness to kill during the crime. In imposing a new sentence, the District Court stated, "[t]he Defendant's readiness and callousness to commit such crime which, as far as the Defendant was concerned, could have involved the killing of individual(s) is very troubling." App. 15. Harris argues that his willingness to kill was already incorporated into his sentence through the two-level guideline enhancement for his possession of a firearm during the offense. Consequently, he claims, it should not have been considered by the District Court when it imposed a new sentence. Despite what Harris argues, the possession of a firearm enhancement does not contemplate a defendant's willingness to kill during the commission of an offense. Accordingly, Harris' argument fails.

Lastly, Harris argues that the Court abused its discretion by placing his sentence higher in the new Guidelines range than his previous sentence was in the old Guidelines range. Harris claims that the only new factor the District Court considered was his exemplary conduct since he became incarcerated. Harris therefore believes that all the factors properly considered should have led the Court to impose a new sentence that, at the very least, was proportional to his old sentence relative to his new range. But the Supreme Court has explicitly held that there is no presumption that a new sentence will

7

be proportionally placed in the new Guidelines range at resentencing. *Chavez-Meza*, 138 S. Ct. at 1966. A district court can resentence a defendant to a non-proportional sentence within the new range and need only show it considered the proper factors when resentencing. *Id*. Here, the District Court amply showed it made the required considerations. It was well within the Court's discretion to impose the new sentence at the top of the new Guidelines range. As a result, Harris' final argument fails.

IV

For the aforementioned reasons, we will affirm the resentencing order of the District Court.